UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
ALEXANDER KATZ,

                Plaintiff,

                          **MEMORANDUM & ORDER**
   - against -                            19-CV-2762 (PKC)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
----------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

Plaintiff Alexander Katz brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's claim for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Before the Court are the parties' cross-motions for judgment on the pleadings. Plaintiff seeks an order remanding this matter for further administrative proceedings, and the Commissioner asks the Court to affirm the denial of Plaintiff's claim. For the reasons that follow, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion.

**BACKGROUND**

**I.     Procedural History**

On August 5, 2015, Plaintiff filed an application for DIB, alleging disability beginning on July 25, 2015. (*See* Administrative Transcript ("Tr.[1]"), Dkt. 10, at 166.)[2] He also applied for SSI

---

[1] Page references prefaced by "Tr." refer to the continuous pagination of the Administrative Transcript (appearing in the lower right corner of each page) and not to the internal pagination of the constituent documents or the pagination generated by the Court's CM/ECF docketing system.

[2] Plaintiff's Form SSA-3368 lists his date of disability onset as July 12, 2015, rather than July 25, 2015. Both his DIB and SSI Applications, however, list July 25, 2015 as his onset date. (*See* Tr. at 166, 145.) The Court therefore adopts July 25, 2015 as the onset date. The Court also

1

on August 4, 2015.  (*Id.* at 144, 164.)  On November 3, 2015, Plaintiff's application for DIB was denied (*id.* at 72–83), and on November 12, 2015, his application for SSI was denied (*id.* at 84–87).  On December 17, 2015, Plaintiff filed a request for a hearing before an administrative law judge ("ALJ").  (*Id.* at 89–90.)  On December 13, 2017, Plaintiff appeared with counsel before ALJ Jack Russak via video-conference.  (*Id.* at 30–50.)  In a decision dated February 6, 2018, the ALJ determined that Plaintiff was not disabled under the Social Security Act (the "Act") and was not eligible for DIB or SSI.  (*Id.* at 12–29.)  On March 6, 2019, the ALJ's decision became final when the Appeals Council of the SSA's Office of Disability Adjudication and Review denied Plaintiff's request for review of the decision.  (*Id.* at 1–6.)  Thereafter, Plaintiff timely[3] commenced this action.

---

notes that prior to Plaintiff's alleged onset date, he was incarcerated in connection with an incident during which he threatened a van driver with a knife and then stole the van. (*See id.* at 249–269 (forensic-psychiatric evaluation relating to indictment).)  A month prior to his release from prison, which was about two months before his onset date, Plaintiff underwent a forensic psychiatric evaluation in which the examiner opined that there was a nexus between the act for which Plaintiff was incarcerated and his psychiatric issues. (*Id.*)

[3] According to Title 42, United States Code, Section 405(g),

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g).  "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the claimant makes a reasonable showing to the contrary."  *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing 20 C.F.R. §§ 404.981, 422.210(c)).  Applying this standard, the Court determines that Plaintiff received the Commissioner's final decision on March 11, 2019, and that, because Plaintiff filed the instant action on May 10, 2019—exactly 60 days later—it is timely.  (*See generally* Complaint, Dkt. 1.)

2

**II.     The ALJ Decision**

In evaluating disability claims, the ALJ must adhere to a five-step inquiry. The claimant bears the burden of proof in the first four steps of the inquiry; the Commissioner bears the burden in the final step. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). First, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the answer is yes, the claimant is not disabled. If the answer is no, the ALJ proceeds to the second step to determine whether the claimant suffers from a severe impairment. *Id.* § 404.1520(a)(4)(ii). An impairment is severe when it "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the impairment is not severe, then the claimant is not disabled.

In this case, the ALJ found that Plaintiff suffers from the following severe impairments: "schizophrenic disorder, bipolar disorder, alcoholic abuse in remission, and obesity." (Tr. at 17 (citations omitted).) The ALJ then progressed to the third step and determined that Plaintiff's severe impairments did not meet or medically equal "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)" (the "Listings"). (*Id.* at 18.) Moving to the fourth step, the ALJ found that Plaintiff maintained the residual functional capacity ("RFC")[4] to perform

> a full range of work at all exertional levels but with the nonexertional limitations. Specifically, the claimant should avoid exposure to moving machinery, unprotected heights, and driving of vehicles. From a mental standpoint, the claimant is limited to work that involves simple, routine tasks. The work should be in a low stress environment, which is defined as having only occasional decision making and occasional changes in the work setting. The claimant would further be limited to work that requires only occasional use of judgment on the job, but no interaction with the public. The claimant should additionally be limited to occasional interaction with co-workers and supervisors.

---

[4] To determine the claimant's RFC, the ALJ must consider the claimant's "impairment(s), and any related symptoms . . . [which] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

3

(*Id.* at 19.) Based upon the RFC finding, the ALJ determined that Plaintiff was incapable of performing his past relevant work as a computer drafter (*id.* at 23–24), but that Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," including the representative occupations of finish inspector, cleaner and polisher, and small-products assembler (*id.* at 25). The ALJ accordingly concluded that Plaintiff was not disabled. (*Id.*)

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits. 42 U.S.C. § 405(g). In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*, 697 F.3d at 151 (internal quotation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation and alterations omitted). In determining whether the Commissioner's findings were based upon substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (internal quotation omitted). If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld. 42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (noting that "[a]n ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits [the court] to glean the rationale of an ALJ's decision" (internal quotation omitted)). Ultimately, the reviewing court "defer[s] to the

4

Commissioner's resolution of conflicting evidence," *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012), and, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld[,]" *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).

## DISCUSSION

Plaintiff advances four principal arguments as to why the ALJ's decision should not be upheld: (1) that the ALJ failed to properly develop the record, (2) that, at step three, the ALJ incorrectly evaluated the paragraph B criteria by which a mental impairment is to be assessed, (3) that the ALJ's residual functional capacity determination was neither supported by substantial evidence nor accompanied by sufficient discussion, (4) and that, at step five, the ALJ erroneously failed to consider Social Security Ruling 85-15. (*See* Plaintiff's Memorandum of Law in Support of his Motion for Judgment on the Pleadings ("Pl.'s Mot."), Dkt. 14-1, at 15–24.)

The Court finds that the ALJ failed to adequately develop the record with respect to Plaintiff's mental impairments by not eliciting medical source statements from Plaintiff's treating psychiatrist. "Although 'the claimant has the general burden of proving that he or she has a disability within the meaning of the Act,' []'because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record.'" *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 342–43 (E.D.N.Y. 2010) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)); *see also Sims v. Apfel*, 530 U.S. 103, 110–11 (2000) (noting that the non-adversarial nature of Social Security proceedings requires the ALJ "to investigate the facts and develop the arguments both for and against granting benefits" (citation omitted)). This duty is present "[e]ven when a claimant is represented by counsel," *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009), and a record may be incomplete even

5

after counsel for a plaintiff confirms at the ALJ hearing that there are no gaps in the record, *see Pagan v. Berryhill*, No. 16-CV-3774 (ER), 2017 WL 4174815, at *7 (S.D.N.Y. Sept. 20, 2017) (finding that the ALJ had failed to develop the record even after plaintiff's counsel described it as complete at the hearing). An ALJ's "failure to develop the record adequately is an independent ground for vacating the ALJ's decision and remanding the case." *Green v. Astrue*, No. 08-CV-8435 (LAP) (FM), 2012 WL 1414294, at *14 (S.D.N.Y. Apr. 24, 2012) (citing *Moran*, 569 F.3d at 114–15), *report and recommendation adopted*, 2012 WL 3069570 (S.D.N.Y. July 26, 2012); *accord Alvarez v. Comm'r of Soc. Sec.*, No. 14-CV-3542 (MKB), 2015 WL 5657389, at *14 (E.D.N.Y. Sept. 23, 2015) (quoting same).

Here, while the record is voluminous, it contains only limited (and old) opinion evidence. It includes: (1) an evaluation from a consultative psychologist, Dana Jackson, Psy.D. (*see* Tr. at 1079–83), who met with Plaintiff once in the fall of 2015; (2) an evaluation from state agency psychologist Dr. Erlinda Gagan, who reviewed some, but not all, of Plaintiff's records, and never met with Plaintiff (*id.* at 51–59), also from fall 2015;[5] and (3) an August 2015 third-party function report from Plaintiff's FEDCAP case manager, Nikol Jones (*id.* at 187–96). While the record contains treatment notes from St. George's Clinic at Richmond University Medical Center for the period from July 2015 through November 22, 2017 (*id.* at 1098–1276), and while it appears that

---

[5] Though it is not discussed in the ALJ's opinion, the record also contains the May 11, 2015 Forensic Psychiatric Evaluation from Alexander S. Bardey, M.D. (*see* Tr. at 249–69), which was completed roughly two months prior to Plaintiff's alleged onset date and one month prior to his release from incarceration. The evaluation does not address Plaintiff's functional limitations, but instead opines that there was a nexus between the act for which Plaintiff was incarcerated (threatening the driver of a van with a knife and then stealing that van) and Plaintiff's psychiatric issues. (*Id.*) The evaluation notes that Plaintiff began experiencing psychiatric symptoms in 2001, during his last year of high school, when he became depressed for the first time and "began to experience auditory hallucinations of a male voice speaking in the past tense." (*Id.* at 251.) He also "became paranoid that people were watching him." (*Id.*)

Plaintiff regularly saw both a treating psychiatrist (Aleksandr Zverinskiy, M.D.) and therapist (Melvinik Simmons, LMSW) at the St. George's Clinic during that period (*see id.* at 1216–48, 1245–48, 1250–58, 1108-1110), the record does not contain opinions from either professional regarding any functional limitations caused by Plaintiff's schizoaffective disorder diagnosis.[6]

"The ALJ's duty to develop the record is especially vital with respect to a treating physician's opinion because of the considerable weight ordinarily accorded to the opinions of treating physicians." *Noviello v. Comm'r of Soc. Sec.*, No. 18-CV-5779 (PKC), 2020 WL 353152, at *8 (E.D.N.Y. Jan. 21, 2020) (internal quotation marks, alteration, and citation omitted); *see also Alvarez,* 2015 WL 5657389, at *14 ("The duty to develop a full record compels the ALJ to obtain from the treating source expert opinions as to the nature and severity of the claimed disability. . . . Until he satisfies this threshold requirement, the ALJ cannot even begin to discharge his duties." (internal quotation marks, citation, and alterations omitted)). Here, the applicable Social Security regulations required the Commissioner to obtain opinion evidence from Plaintiff's treating providers.[7] "Indeed, the plain text of the regulation does not appear to be conditional or hortatory:

---

[6] The Court also notes that Ms. Jones's report lists "David D[,] DR" as Plaintiff's treating physician. (*See* Tr. at 202–03.) It does not appear that the record contains any treatment notes, much less any opinion evidence, from Dr. David. Though Dr. David's name appears on a November 6, 2015 disability worksheet (*id.* at 232), indicating that the agency was aware that he was a treating physician for Plaintiff, there is no "disposition" listed regarding the information sought from him. Failure to follow up and seek notes from Dr. David, to the extent he was in fact Plaintiff's treating physician, was error. *See Jeanniton v. Berryhill*, No. 15-CV-5145 (DLI), 2017 WL 1214480, at *9–10 (E.D.N.Y. Mar. 31, 2017) (finding the ALJ had failed to develop the record where "the disability worksheet contain[ed] no notes for [a treating physician], whereas other treating sources were given various disposition notes indicating the status of their requests for records (e.g., 'did not respond to our requests,' 'report was received,' 'has no medical records available,' etc.)," where "there [wa]s no evidence that [the] ALJ [had] reached out to [the physician] to fill this material gap," and where "none of [the physician's] notes or opinions [we]re contained in the record").

[7] This principle is known as the "treating physician rule." Although "[t]he current version of the [Act]'s regulations eliminates the treating physician rule," the rule nevertheless applies to Plaintiff's claim, as the current regulations only "apply to cases filed on or after March 27, 2017."

7

it states that the Commissioner '*will* request a medical source statement' containing an opinion regarding the claimant's residual capacity." *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013) (summary order) (emphasis in original) (quoting 20 C.F.R. §§ 404.1513(b)(6), 416.913(b)(6)).

However, when the record "contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity," *id.* at 34, the failure to obtain medical source opinion evidence is not "*per se* error," *Sanchez v. Colvin*, No. 13-CV-6303 (PAE), 2015 WL 736102, at *5 (S.D.N.Y. Feb. 20, 2015) (collecting cases). "The critical point" is that the claimant's medical records must contain "the sorts of nuanced descriptions and assessments that would permit an outside reviewer to thoughtfully consider the extent and nature" of Plaintiff's impairments and "their impact on [his] RFC." *Id.* at *8. However, when the medical records only discuss the claimant's illnesses and how to treat them, without offering "insight into how [his] impairments affect or do not affect [his] ability to work, or [his] ability to undertake [his] activities of everyday life," the ALJ's duty to request a medical source statement is ordinarily triggered. *Guillen v. Berryhill*, 697 F. App'x 107, 109 (2d Cir. 2017) (summary order); *see also Hooper v. Colvin*, 199 F. Supp. 3d 796, 814 (S.D.N.Y. 2016) ("[F]or an ALJ to make a disability determination without seeking any treating physician opinion, there must be no obvious gaps in the administrative record, and the ALJ must possess a complete medical history." (internal quotation marks and citations omitted)).

In this case, the Court finds that the record was not sufficiently developed and did not provide "enough evidence for the ALJ to render his decision" in light of the missing treating

---

*Burkard v. Comm'r of Soc. Sec.*, No. 17-CV-290 (EAW), 2018 WL 3630120, at *3 n.2 (W.D.N.Y. July 31, 2018); *see also* 20 C.F.R. § 404.1520(c). Because Plaintiff's claim was filed in 2015, the treating physician rule applies.

8

opinion statement.  (Memorandum of Law in Support of the Commissioner's Cross-Motion for Judgment on the Pleadings ("Comm'r Mot."), Dkt. 16-1, at 13).  "Efforts to ensure that the record contains all relevant evidence from treating sources . . . [are] especially critical when the claimed disability pertains to a plaintiff's mental health."  *Valentine v. Comm'r of Soc. Sec.*, No. 18-CV-3985 (MKB), 2019 WL 3974576, at *14 (E.D.N.Y. Aug. 21, 2019).  In the absence of opinion evidence from Plaintiff's treating physician or physicians, the ALJ in this case based his opinion on the dated evaluations of two consultative medical sources, Drs. Jackson and Gagan, only one of whom met with Plaintiff, a similarly dated function report prepared by Plaintiff's former case manager, Ms. Jones; Plaintiff's treatment notes; and his self-reported daily activities.  (*See* Tr. 18–24.)  The ALJ assigned "significant weight" to Dr. Jackson's opinion, "some weight" to Dr. Gagan's, and "little weight" to Ms. Jones's opinion.  Plaintiff points to additional gaps in the current record beyond the lack of opinion evidence from his treating physician and therapist, including the staleness of the consultative opinions, each given more than two years before the Commissioner's decision and without benefit of Plaintiff's full updated medical record.  (*See* Plaintiff's Reply ("Pl.'s Rep."), Dkt. 17, at 1–5.)

The Court agrees that, taken together, these deficiencies and gaps in the record made it impossible for the ALJ to determine whether Plaintiff was disabled.  Because the most recent opinion evidence in the record was from 2015, "the ALJ did not have a *current* opinion from even one consultative examiner, let alone from a treating physician."  *Hooper*, 199 F. Supp. 3d at 815 (emphasis added) (finding remand required where the ALJ made a disability determination "based on a record devoid of any truly complete medical opinion" because the opinions from non-examining state psychologists "did not account for the entirety of [the plaintiff's] medical record," and noting that "[i]f the ALJ could not obtain sufficient information from [the plaintiff's] own

9

medical sources, he could have commissioned a new consultative examination to ensure there was *some* medical opinion in the record" (emphasis in original)). Moreover, to the extent the ALJ reached his opinion based on the references in each of the consultative opinions to Plaintiff's performance activities of daily living ("ADLs"), this was likely improper. "[T]he Commissioner's regulations [] recognize that individuals with psychiatric disabilities may appear to adequately function in a restricted setting, but still may be unable to meet the demands of a competitive workplace environment." *McColl v. Saul*, No. 18-CV-04376 (PKC), 2019 WL 4727449, at *11 (E.D.N.Y. Aug. 27, 2019) ("[The Commissioner] must exercise great care in reaching conclusions about [the plaintiff's] ability or inability to complete tasks under the stresses of employment during a normal workday or work week based on . . . [the plaintiff's] ability to complete tasks in other settings that are less demanding, highly structured or more supportive." (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00 (C)(3))).

> Indeed, as cautioned in the SSA's regulations,
>
> [t]he reaction to the demands of work (stress) is highly individualized, and mental illness is characterized by adverse responses to seemingly trivial circumstances. The mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day. . . . Thus, the mentally ill may have difficulty meeting the requirements of so-called "low-stress" jobs.

SSR 85–15, 1985 WL 56857, at *6 (Jan. 1, 1985); *see Moss v. Colvin*, No. 13-CV-731 (GHW) (MHD), 2014 WL 4631884, at *33 (S.D.N.Y. Sept. 16, 2014) ("There are critical differences between activities of daily living (which one can do at his own pace when he is able) and keeping a full time job." (citation omitted)). Here, Plaintiff has been diagnosed with, *inter alia*, schizoaffective disorder, depressive type, and alcohol abuse. (*See, e.g.*, Tr. at 285–87, 768, 933, 1082, 1128.) Before his claimed onset date, Plaintiff was incarcerated from September 2013 to

10

June 2015, after stealing a van near his home that he believed was surveilling him.[8] (*See id.* at 249–268, 1001.) His pre-onset treatment records document past suicide attempts (*id.* at 252) and at least one hospitalization (*id.* at 17, 264). His post-onset records contain multiple references to auditory hallucinations and paranoid hallucinations of being watched[9] (*see, e.g.*, *id.* at 254, 300–01, 1072), though, as the ALJ noted, more recent treatment records indicated that Plaintiff had improved with treatment (*id.* at 20–21, *see generally id.* at 1216–58), and was generally asymptomatic.[10] While the record indicates that Plaintiff was able to manage many of his ADLs competently while on medication and not working (*see id.* at 1242), the ALJ did not have a sufficient basis for this conclusion without an expert opinion from Plaintiff's treating physician as

---

[8] Treatment plan notes from Richmond Medical Center also reference a felony conviction Plaintiff has for stabbing his employer when not taking his medication (*see* Tr. at 1229), though this incident is not mentioned elsewhere in the record, and was not addressed at the hearing.

[9] The ALJ's decision states that "[m]edical providers further assessed that . . . [Plaintiff] exhibited . . . no abnormal thought content, hallucinations, homicidal/suicidal ideations, and feelings [of] hopelessness/helplessness." (Tr. at 21.) At the hearing, the ALJ similarly interrupted Plaintiff's account of his auditory hallucinations to state that he had "looked at [Plaintiff's] records" and that in "many reports [Plaintiff's doctor] sa[id]: . . . [that Plaintiff d]enied auditory and visual hallucinations." (*Id.* at 44–45.) While the ALJ is of course correct that there are multiple instances in which doctors noted that Plaintiff had denied experiencing hallucinations, there are also numerous instances in the record documenting Plaintiff's experience of auditory hallucinations. It is plainly error for the ALJ to only address the portion of the record that supports his determination. *See, e.g.*, *Stewart v. Colvin*, No. 15-CV-2427 (MKB), 2016 WL 5349768, at *17 (E.D.N.Y. Sept. 23, 2016) ("[T]he ALJ cannot simply pick and choose from the transcript only such evidence that supports his determination, without affording consideration to evidence supporting the plaintiff's claims." (internal quotation marks and citations omitted)). This is particularly true with regard to reports of hallucinations, which can often be intermittent. *See McColl*, 2019 WL 4727449, at *13 ("[I]nconsistencies [in p]laintiff's reporting, or the occurrence, of hallucinations do[] not provide a basis for discrediting his testimony regarding his symptoms[,] [as] the fact that [p]laintiff did not experience hallucinations on a constant or predictable basis certainly does not undermine the credibility of his reports about experiencing hallucinations.").

[10] The Court notes that there is evidence in the record reflecting that Plaintiff's mental state took a negative turn after he attempted to return to school in 2017 (*see id.* at 1254), suggesting that Plaintiff's ability to complete his activities of daily living may differ depending on environment.

11

to Plaintiff's functional limitations in an employment context.[11] *See Noviello*, 2020 WL 353152, at *8 (remanding case where "[a]lthough the ALJ did not 'ignore' the medical evidence in th[e] case, he failed to solicit medical opinion evidence from many of the treating physicians referenced in notes from office visits" (record citation omitted)); *see also Hilsdorf*, 724 F. Supp. at 347 ("Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error." (citation omitted)). On remand, the ALJ should seek an opinion from Plaintiff's treating psychiatrist as to his functional limitations, or, failing that, should request an updated opinion from a consultative examiner.

Because the Court finds that remand is warranted based on the ALJ's failure to properly develop the record, it declines to reach Plaintiff's other arguments. *See Alvarez*, 2015 WL 5657389, at *18 ("Where, as here, an ALJ fails to adequately develop the record in reaching a

---

[11] The Court also notes that there are multiple inconsistencies in the record regarding Plaintiff's level of disability that the ALJ could not have resolved without additional evidence or impermissibly substituting his own opinion. For instance, Plaintiff notes that despite the ALJ's attachment of "significant weight" to Dr. Jackson's opinion, he neglected to note that she described Plaintiff's ability to socialize as "marginal to fair" (*see* Pl.'s Mot, Dkt. 14-1, at 17–18 (citing Tr. at 1082)), which suggests a more serious level of limitation. At a minimum, the ALJ should have sought additional evidence as to Plaintiff's social limitations. By developing the record, the ALJ might have obtained an explanation for why professionals assessed Plaintiff with Global Assessment of Functioning (GAF) scores indicating moderate to severe limitations (Tr. at 23), or why his caseworker evaluated him as disabled (*id.* at 22).

Though the treating physician rule does not apply to non-physician records, the Court notes that an ALJ can solicit information from a treating therapist as well as a treating physician where the medical evidence is contradictory or insufficient. *See Corrigan v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-5686 (PKC), 2019 WL 5212850, at *3 n.5 (E.D.N.Y. Oct. 16, 2019) (directing the ALJ to solicit information from Plaintiff's therapist on remand). On remand, the ALJ should solicit information from Plaintiff's treating therapist as well as his psychiatrist in order to address these gaps.

conclusion on a claimant's residual functional capacity, the Court is unable to review whether the ALJ's denial of benefits was based on substantial evidence.")

## CONCLUSION

For the reasons set forth above, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. The Commissioner's decision is remanded for further consideration consistent with this Memorandum and Order. The Clerk of Court is respectfully requested to enter judgment and close this case accordingly.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 30, 2020
       Brooklyn, New York